UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

GREGORY L. WHISNANT,            )
                                )
    *Petitioner,*               )
v.                              )     No. 1:10-CV-142
                                )     *Chief Judge Curtis L. Collier*
HOWARD CARLTON, Warden.         )
                                )
    *Respondent.*               )

## M E M O R A N D U M

Gregory L. Whisnant ("Petitioner") has filed a petition for *writ of habeas corpus* pursuant to 28 U.S.C. § 2254 (Court File No.1). Petitioner has also filed two motions to place his case on the docket, both of which will be **DENIED** (Court File Nos. 14 & 15).

In 2005 Petitioner was convicted by a jury of one count of carjacking. He now petitions this Court for review of that conviction. He bases his effort for relief on a claim that the evidence is insufficient to support a carjacking conviction and several alleged instances of ineffective assistance of counsel.

Respondent Howard Carlton ("Respondent"), Warden of the facility where Petitioner is housed, filed a Motion for Summary Judgment (Court File No. 7). After considering the filings of Respondent and Petitioner, the record of the state proceedings, and the applicable law, the Court will **GRANT** Respondent's Motion for Summary Judgment (Court File No. 7). Therefore the Court necessarily will **DENY** Petitioner's § 2254 petition (Court File No. 1).

### I.    STANDARD OF REVIEW

A state criminal defendant may obtain federal habeas relief if he can demonstrate he is in custody pursuant to the judgment of a state court in violation of the Constitution or laws or treaties

of the United States. 28 U.S.C. § 2254. Under Rule 8 of the Rules Governing Section 2254 Proceedings in the United States Districts Courts, the Court is to determine, after a review of the response, the transcript, record of state court proceedings, and the expanded record, whether an evidentiary hearing is required. If a hearing is not required, the district judge may dispose of the case as justice dictates. After carefully reviewing the required materials, the Court finds it unnecessary to hold an evidentiary hearing.

Federal courts, pursuant to 28 U.S.C. § 2254(d), which is a part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), reviews decisions of the state courts. This statute limits a federal district court's jurisdiction to review habeas claims on the merits. In particular, a court considering a habeas claim must defer to any decision by a state court concerning claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

When reviewing a state court's adjudication of a habeas claim, the federal district court must presume the state court's factual determinations were correct. 28 U.S.C. § 2254(e)(1). The petitioner may rebut this presumption of correctness by clear and convincing evidence. *Id.*

## II. PROCEDURAL HISTORY

Petitioner, on May 3, 2005, was convicted of the offense of carjacking by a McMinn County Jury and was sentenced to eleven years in the Tennessee Department of Corrections [Addendum No. 2, Vol. 1, pp. 16-17]. Petitioner filed a motion for a new trial on March 27, 2006, which was denied

2

by the trial court on May 1, 2006 [Addendum No. 2, Vol. 1, pp. 18-19, 25]. Petitioner subsequently filed a notice of appeal on May 26, 2006 [Addendum No. 1, Vol. 1, p. 26]. The Court of Criminal Appeals of Tennessee affirmed the judgment of the trial court on May 2, 2007, and the Supreme Court of Tennessee denied Petitioner's application for permission to appeal on August 13, 2007 [Addendum No. 1, Vols. 3 & 4].

Petitioner filed a state post-conviction petition on October 23, 2007 which was denied by the trial court on March 13, 2008, after a hearing [Addendum III, Vol. 1, pp. 54-60]. The Court of Criminal Appeals of Tennessee affirmed the trial court on February 24, 2009 [Addendum No. I, Vol. 7]. Petitioner filed the instant habeas petition on November 30, 2009 (Court File No. 1).

## III. Factual Background

The facts as to the carjacking conviction are taken from the appellate court's opinion affirming the convictions:

> Ms. Edith Kay Harris, the victim, testified at trial that she worked as a medical assistant at Athens Regional Medical Center and drove her 2003 Toyota Forerunner to work on June 5, 2004, arriving at 7:30 a.m. She parked in the hospital parking lot in a space that faced away from the building and toward the street. She went to the passenger side door to retrieve her purse and carryall bag; she then "shut the door and locked [her] vehicle." When she had walked "about halfway across" the parking lot, the defendant emerged from the front doors of the hospital, carrying a blanket and a carryall bag.
>
> The victim testified that she encountered the defendant on the sidewalk and realized "he wasn't going to move" to allow her to pass. She testified that as she tried to walk around him, he said, "Give me those keys." When she declined, "the struggle started," and she testified, "He started pulling me towards my vehicle, and a tug of war was on. He would yank me and I'd literally come off my feet." The victim described a struggle in which she and the defendant moved "all the way down the parking lot . . . almost at my truck." The defendant finally wrested the keys from her.

3

The defendant used the keys to unlock the victim's Toyota, inserted himself behind the wheel, and backed the vehicle out of the parking space, nearly hitting the victim. The victim ran into the hospital where she enlisted help in calling the police. She testified that the vehicle was worth approximately $25,000 on June 5, 2004.

Athens Police Detective Fred Schultz testified that he was called to investigate the June 5 incident and that based upon the victim's information, the defendant first confronted the victim at a point 78 feet from the victim's vehicle, and the struggle ended at a point 38 feet from the vehicle. The victim's description of her assailant reminded the detective of an individual he had seen the night before at a gas station located next to the hospital. Detective Schultz testified that the police bulletin publishing the description of the vehicle and the perpetrator resulted in the arrest of the defendant-and discovery of the vehicle-in Alabama.

Detective Schultz introduced into evidence photographs taken on June 8, 2004, that depicted the recovered Toyota Forerunner and its contents, including photographs of two envelopes and a checkbook bearing the defendant's name and Chattanooga address. Officer Schultz also found in the vehicle, and introduced a picture of, an Athens Regional Medical Center admission form bearing the defendant's name and the date June 4, 2004. The detective introduced a photograph of a black Nike visor recovered from the van, and he testified that the visor matched the visor he had seen the man wearing at the gas station on the evening of June 4, 2004. Detective Schultz found the victim's license tag lying on the Toyota's seat.

Additionally, Detective Schultz testified that he interviewed the defendant, who was then in custody in Alabama. The detective introduced the defendant's written statement in which the defendant admitted that, following an automotive accident, he had been treated at Athens Regional Medical Center and was discharged on June 4, 2004. Because he was unsuccessful in obtaining a ride, the defendant spent the night around the gas station and in the hospital lobby. When he noticed a lady standing next to her vehicle in the hospital parking lot, he went into the lobby, picked up his bag and blanket, went toward the lady now on the sidewalk, spoke to her, grabbed her keys, and ran to the vehicle. In his statement, the defendant admitted driving the Toyota to Chattanooga and ultimately to Alabama. He stated that he took the vehicle because he "needed a way back to Chattanooga."

The defendant elected not to testify and presented no evidence in his defense.

*State v. Whisnant*, 2007 WL 1280722, *1 -2 (Tenn.Crim.App. 2007).

## III. ANALYSIS

### A. *Sufficiency of the Evidence*

Petitioner challenges the sufficiency of the evidence. Petitioner does not deny he forcibly took the victim's vehicle, rather he claims there was insufficient evidence to prove he took the vehicle from the possession of the victim, as required by the statute. Petitioner explains, he took her keys from her by force as she was walking away from her vehicle. According to Petitioner, the statute does cover the situation presented here because the victim was only in constructive possession of her vehicle. The state trial court reviewed the facts leading up to and after Petitioner drove off in the victim's vehicle and determined the evidence was sufficient to establish carjacking.

On direct appeal the appellate court applied the same standard as that identified in *Jackson v. Virginia,* 443 U.S. 307, 319 (1979), the clearly established federal law standard. In *Jackson* the Supreme Court held that evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Explaining that a person commits felony carjacking by intentionally or knowing taking "a motor vehicle from the possession of another by use of . . .[f]orce or intimidation[,]" Tenn. Code Ann. § 39-13-404(a) (2003), the appellate court determined the evidence was sufficient to establish Petitioner committed a carjacking under the Tennessee statute. The state court provided the following explanation in concluding Petitioner took the vehicle from the possession of the victim:

> In the light most favorable to the State, the evidence showed that the defendant first observed the victim as she was standing by her vehicle, that he delayed his encounter with her merely to obtain his belongings from the hospital lobby, and that he then immediately confronted the victim and forcibly took her keys. He then drove away in the victim's vehicle, nearly striking her as he backed out of the parking space.

5

> We hold that this evidence is sufficient for a rational jury to conclude that the defendant took the vehicle from the possession of the victim. "[T]he word possession as used in the carjacking statute includes the taking of the car in the presence of the victim." *State v. Henry A. Edmondson, Jr.,* No.M2005-02665-CCA-R3-CD, slip op. At 6 (Tenn. Crim. App., Nashville, July 8, 2006) (affirming a conviction of carjacking when "the victim was 'three cars away' from her car when the defendant confronted her and demanded her car keys and money"), *app. granted* (Tenn. Nov. 20, 2006).

*State v. Whisnant*, 2007 WL 1280722, at * 3.

A state court's interpretation and application of its own law is not redressable through the federal habeas process unless the state court's interpretation rendered the trial that convicted the petitioner so fundamentally unfair as to have deprived him of substantive due process in violation of the United States Constitution. *See Estelle v.McGuire*, 502 U.S. 62, 67-68 (1991) ("reemphasiz[ing] that it is not the province of a federal habeas court to reexamine state-court determinations on state-law question"); *Norris v. Schotten*, 146 F.3d 314, 328-29 (6th Cir. 1998) (state-law-error claim not cognizable during habeas proceedings).

Here, Petitioner attacks the state court's interpretation of the state carjacking statute. For the reasons explained below, the state court's decision will not be disturbed. Petitioner argues that at most, the victim was in constructive possession of her vehicle and the statute does not cover such possession. The Supreme Court of Tennessee has addressed whether the taking of a vehicle from a victim who is near the car constitutes carjacking. *See State v. Edmondson*, 231 S.W.3d 925 (Tenn. 2007) (construing possession in the carjacking statute to included situations where the victim is separated from her car by some distance). In *Edmondson*, the victim had parked her vehicle in front of a store by the sidewalk, exited her vehicle, and started walking on the sidewalk toward the store when a man approached her and demanded her money and keys, which scared her "[r]eally, really bad" so she threw her keys and the ten dollar bill she had in her hand on the ground and ran out into

6

the parking lot screaming, as the man took off in her vehicle. *Id.* at 926.

The state Supreme Court noting Tennessee's criminal code does not define the word "possession[,]" explained that it is permitted to look to other sources for guidance when the Legislature does not provide a specific definition for a statutory term, so it consulted *Black's Law Dictionary*, for guidance. Because it did not unequivocally provide an answer as it discussed both actual possession and constructive possession, the court also considered the fact that "the Legislature chose to use different language in the carjacking statute than it used in the robbery statutes or that Congress used in the federal carjacking statute[,]" and concluded "[a] comparison of the differing terminology persuades us that our General assembly intended carjacking to include forcible takings of motor vehicles from victims even when the victim is some distance from his or her car at the time of the taking." *Id.* at 929. The court reached this conclusion because the state's robbery statute specified "the intentional or knowing theft of property *from the person of another* by violence or putting the person in fear[,]" Tenn. Code Ann. § 39-13-401(a) (emphasis added), so if the Legislature had meant to limit carjacking to the taking of the vehicle from the victim's actual possession or from the victim's immediate presence, it would have used the same terminology it used in the robbery statute. The court also reviewed the Legislative history of the statute and the holdings in other jurisdictions and concluded they were consistent with the conclusion that "from the possession of another" includes situations where the victim is separated from her car by some distance. *Id.* at 930.

The state court's interpretation and application of Tennessee's carjacking law does not implicate a constitutional violation as it did not render Petitioner's trial so fundamentally unfair as to deprive him of substantive due process in violation of the United States Constitution.

7

Accordingly, the Court is bound by the state court's interpretation and application of Tennessee's carjacking statute.

Viewed in the light most favorable to the state, the evidence here reveals the defendant saw the victim exit her vehicle, grabbed his belongings, approached her, and forced her back towards her vehicle as he struggled to obtain possession of her keys. The victim testified Petitioner yanked her off her feet as he started pulling her towards her vehicle "all the way down the parking lot . . . almost to her truck[,]" and he nearly hit her when he backed the vehicle out of the parking space. The struggle began approximately 78 feet from her vehicle and ended approximately 38 feet from her vehicle.

Based on the facts in the record, a reasonable jury could have found Petitioner took the vehicle from the victim's possession when he forcibly took the keys to her vehicle from her after pulling her back within 38 feet of her vehicle. The victim was sufficiently near her vehicle for a reasonable jury to find the vehicle was taken from the victim's possession by use of force.

In *Jackson*, the Supreme Court held that evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id*. at 319. Applying *Jackson* and viewing the evidence in the light most favorable to the prosecution, there is absolutely no doubt any rational trier of fact could have found the elements of taking a motor vehicle from the possession of another by force, beyond a reasonable doubt. The state court's adjudication of this claim and its resulting decision was not "contrary to" or an "unreasonable application" of clearly established Supreme Court precedent, *Jackson v. Virginia*. Therefore, no relief can be granted on this claim and it will be **DISMISSED**.

## B. Ineffective Assistance of Counsel

Petitioner raises several alleged instances of ineffective assistance of counsel, only one of which he properly presented to the state appellate court.

### 1. Procedural Bar

Ordinarily, state prisoners must first exhaust their available state court remedies before seeking habeas relief by fairly presenting all of their claims to the state courts. 28 U.S.C. § 2254(b)(c); *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995) (per curiam); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Thus, a state prisoner must exhaust all constitutional claims, by fully and fairly presenting them in state court, before a federal court can consider them in a habeas proceeding. 28 U.S.C. § 2254(b)(1)(A), and (c). If a prisoner fails to present his claims to a state court and is now barred from pursuing relief in the state courts, then his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust. *Hannah v. Conley*, 49 F.3d at 1196. Although there is not an exhaustion problem in this type of case, the prisoner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claim in the state courts and actual prejudice to his defense at trial or appeal. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

Petitioner failed to present all but one of his alleged instances of ineffective assistance to the state appellate court. The only claim presented on appeal was the claim pertaining to trial counsel's failure to object to the introduction of photographs. Consequently, that is the only claim properly before this court and eligible for habeas review. The failure to present the other instances of ineffective assistance of counsel to the Tennessee appellate court in a timely fashion, has resulted

in those claims being procedurally defaulted, and thus, barred from habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Petitioner has not alleged any cause and prejudice, or a miscarriage of justice to excuse his default. Accordingly, absent a showing of cause and prejudice, or a miscarriage of justice, all of Petitioner's ineffective assistance of counsel claims, except the claim that counsel failed to object to the photographs, are procedurally barred and will be **DISMISSED**.

The Court will address the one ineffective assistance of counsel claim properly before it, after it analyzes the applicable law.

### 2. *Applicable Law*

In order to demonstrate ineffective assistance of counsel, a petitioner must show not only his attorney's representation fell below the standard of competence demanded of attorneys in criminal cases but also a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *McMann v. Richardson*, 397 U.S. 759, 771 (1970). The *Strickland* test requires a defendant demonstrate two essential elements: (1) counsel's performance was deficient, i.e., counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defense, i.e., deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id*. at 687-88; *McQueen v. Scroggy*, 99 F.3d 1302, 1310-11 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997); *Sims v. Livesay*, 970 F.2d 1575, 1579-81 (6th Cir. 1992). *See also Flippins v. United States*, 808 F.2d 16, 17-18 (6th Cir.), *cert. denied*, 481 U.S. 1056 (1987).

As the Sixth Circuit explained in *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied*, 508 U.S. 975 (1993): "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *See also West v. Seabold*, 73 F.3d 81, 84 (6th Cir.), *cert. denied*, 518 U.S. 1027 (1996). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West*, 73 F.3d at 84, (quoting *Strickland*, 466 at 691, and citing *Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989)), *cert. denied*, 495 U.S. 961 (1990). There is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Sims*, 970 F.2d at 1579-80.

"Reviewing courts focus on whether counsel's errors have undermined the reliability of and confidence that the trial was fair and just." *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997) (citing, *Strickland*, 477 U.S. at 687; *United States v. Cronic*, 466 U.S. 648, 658, (1984)), *cert. denied*, 523 U.S. 1079 (1998). The Court cannot indulge in hindsight, but must instead evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *Strickland*, 466 U.S. at 690. Trial counsel's tactical decisions are particularly difficult to attack. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound trial strategy. *McQueen*, 99 F.3d at 1311; *O'Hara*, 24 F.3d at 828. Effective assistance of counsel is presumed, and the Court will not generally question matters involving trial strategy. *See United States v. Chambers*, 944 F.2d 1253, 1272 (6th Cir. 1991), *cert. denied*, 502 U.S. 1112 (1992).

To establish the prejudice prong, a petitioner must show that absent his attorney's errors, there is a reasonable probability the result of his trial would have been different. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991). "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998), (quoting *Strickland v. Washington*, 466 U.S. at 690). The Court must make an independent judicial evaluation of counsel's performance, and determine whether counsel acted reasonably under all the circumstances. *McQueen*, 99 F.3d at 1311; *O'Hara*, 24 F.3d at 828; *Ward v. United States*, 995 F.2d 1317, 1321-22 (6th Cir. 1993); *Sims*, 970 F.2d at 1580-81.

*3.     Counsel's Failure to Object to the Introduction of Photographs*

Petitioner contends trial counsel was ineffective for failing to object to the introduction of several photographs which were not provided to trial counsel during discovery but rather were provided the day of trial. Petitioner contends had he been presented with the photographs which irrefutably linked him with the stolen vehicle prior to trial, he likely would have entered a guilty plea.

The state appellate post-conviction court concluded Petitioner was afforded effective assistance of counsel:

> The Petitioner contends that Counsel failed to object and successfully keep certain photographs of the stolen vehicle out of evidence. The Petitioner did not enter those photographs into evidence at the post-conviction hearing for the court to review. Moreover, the Petitioner did not support his claim that these photographs were specifically detrimental and prejudicial to the Petitioner's case with argument or citation to authorities. The photographs apparently linked the Petitioner to the stolen vehicle because they showed his checkbook in the vehicle. There was already ample testimony in the record that identified the Defendant as the person who stole the victim's car. Additionally, the Defendant admitted to stealing the victim's keys from her and then stealing the vehicle. That Counsel did not successfully suppress these

> photographs does not render his representation of the Petitioner ineffective. The Petitioner has failed to show by a preponderance of the evidence that the post-conviction court ruled erroneously. *House*, 44 S.W.3d at 515. The Petitioner is not entitled to relief on this issue.

*Whisnant v. State,* 2009 WL 454257, at *5 (Tenn.Crim.App. 2009).

Petitioner has not demonstrated, and it does not otherwise appear, that the Tennessee appellate court's rejection of this claim contravened or unreasonably applied clearly established federal law. After a thorough review of the record, the Court concludes the state appellate court's conclusion is supported by the record. Petitioner's confession to stealing the victim's vehicle, along with testimony from the victim and the investigating officer, was sufficient, without the pictures, to prove Petitioner committed this crime. Hence, even assuming counsel was ineffective for failing to strenuously object to the introduction of the photographs, Petitioner suffered no prejudice, as there was sufficient evidence, including his confession, to convict him of the crime without introducing the photographs. Thus, the Court is unable to conclude that a reasonable probability exists that a different verdict would have resulted absent the allegedly excludable evidence.

Accordingly, the state appellate court neither unreasonably applied *Strickland* nor unreasonably determined the facts in rejecting this claim; thus, relief will be **DENIED**.

## IV.  Conclusion

Respondent's motion for summary judgment (Court File No. 7) will be **GRANTED** as to all claims. Petitioner is not entitled to an evidentiary hearing, and his § 2254 petition will be **DISMISSED**  (Court File No. 1) .

A judgment order will enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**